UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:19-CR-183 |
| | ) | JUDGE CORKER |
| KRISTOPHER M. VOYLES | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States, through the Acting United States Attorney for the Eastern District of Tennessee, files this sentencing memorandum in accordance with Rule 83.9(j), Local Rules (E.D. Tenn.).

The Government requests that the Court sentence defendant to a term of 21 months in federal prison, a sentence that is at the top of defendant's advisory guidelines. While the requested sentence is at the top of defendant's advisory guidelines, the Government makes this recommendation based on the repeated nature of the offense conduct, the defendant's history and characteristics, and the substantial sentencing concessions the Government has already provided in defendant's plea agreement. The Government's requested sentence is within the advisory guideline range, properly balances the sentencing factors under 18 U.S.C. § 3553(a), and is a sentence that is "sufficient, but not greater than necessary" to comply with the statutory purposes of sentencing. 18 U.S.C. § 3553(a).

**I.      PROCEDURAL BACKGROUND**

On November 13, 2019, the Federal Grand Jury returned a two-count indictment against defendant. [Doc. 1]. The indictment charged one count of theft of government property of more than $1,000 in violation of 18 U.S.C. § 641 and a corresponding count of aggravated identity theft in violation of 18 U.S.C. § 1028A. *Id.* The Government and defendant entered into a

written plea agreement [Doc. 32], and in accordance with that plea agreement, on January 8, 2021, defendant entered a guilty plea to count one charging him with theft of Government property [Doc. 37].

Sentencing is set for April 9, 2021, at 10:00 a.m. *Id.*

## II. FACTUAL BACKGROUND

The facts are outlined in defendant's plea agreement [Doc. 32 at 2-4] and the Presentence Investigation Report ("PSR") [Doc. 40 at 3-5]. The undisputed facts are simple, but unique.

On October 9, 2019, defendant obtained medical services from the Park West Medical Center in Knoxville, Tennessee. When he did, he impersonated a veteran from Memphis, Tennessee, and then used the veteran's name, identifiers, and physical identification documents to obtain treatment. Before getting discharged the next day, defendant sought psychiatric services while still impersonating the veteran. The hospital made arrangements to have the defendant transported to the Mountain Home Veteran's Administration Medical Center ("VAMC") in Johnson City, Tennessee.

Upon admission, defendant continued impersonating the veteran, and between October 10, 2019, and October 17, 2019, he received medical benefits, items, and services that he otherwise was not entitled to receive because he was not a veteran. The agreed value of these benefits, items, and services was $20,502. When a family member realized what defendant was doing, she contacted the VAMC, and an investigation began.

On October 21, 2019, a special agent with the VA OIG interviewed defendant at the Washington County jail.[1] Post-*Miranda*, defendant admitted what he had done. Subsequent investigation revealed that defendant was previously prosecuted by the state of Georgia for using

---

[1] Defendant was in jail on a Georgia warrant for violating a state of Georgia probation.

2

the same veteran's identifiers at the VA Hospital in the Atlanta, Georgia area. The real veteran advised the investigating agent that he never provided defendant with authority to use his name or other means of identification.

## III. STATUTORY MAXIMUM SENTENCE

Defendant is guilty of theft of Government property worth more than $1,000 in violation of 18 U.S.C. § 641. For that offense, defendant faces a statutory maximum sentence of not more than 10 years in prison, a fine of not more than $250,000, supervised release of not more than three years, and a special assessment of $100. *See* 18 U.S.C. §§ 641, 3571(b)(3), 3583(b)(2), and 3013(a)(2)(A).

## IV. ADVISORY GUIDELINE RANGE AND GUIDELINE OBJECTIONS

The advisory guidelines are important because sentences falling within those guidelines "are generally presumed to be reasonable." *United States v. Muchow*, 924 F.3d 272, 275 (6th Cir. 2019); *see United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (presumption of reasonableness appropriate because "there is a confluence between the national views of the Sentencing Commission and the independent views of a sentencing judge, [and] that 'double determination significantly increases the likelihood that the sentence is a reasonable one'") (citation omitted).

Here, the United States Probation Office correctly calculated an offense level of 8 and a criminal history category of V. PSR at ¶ 64. The parties do not object to these calculations, and they yield an advisory guideline range of 15 to 21 months. The Government's recommendation is at the top of those guidelines.

## V.     18 U.S.C. § 3553(a) FACTORS

The Government's requested 21-month sentence takes into account each of the

sentencing factors outlined in 18 U.S.C. § 3553(a).  Notably, the nature and circumstances of the

offense, the history and characteristics of the defendant, the need to treat similarly situated

offenders the same, and the need to protect the public are the primary factors that support the

Government's requested sentence here.

### A.  The Nature and Circumstances of the Offense

Initially, the Court must look to the *nature* and *circumstances* of the offense.  Stealing

Government property, even by simple theft, is a serious crime.  Defendant faces a maximum

term of imprisonment of 10 years because he stole more than $1,000.  Within Congress's

sentencing classification scheme, this offense is a Class C felony, placing it in the middle of

Congress's felony classification scheme.  *See* 18 U.S.C. § 3559(a)(3).

The *circumstances* of the case also show much aggravation and support the

Government's recommended sentence here.  Initially, the manner of theft demonstrates

heightened aggravation.  Defendant's theft was not a simple taking.  Instead, defendant took

Government property be means of fraud, trickery, and deceit.

The type of property defendant stole also shows heightened aggravation.  Defendant did

not take just any Government property.  Instead, he took medical benefits, items, and services

that were pledged by the nation in a sacred trust to care for its veterans who have nobly served

their country.  On a related note, although the Government suffered the monetary loss here,

defendant's use of the identity of a real veteran without permission provides additional

aggravation.

4

The use of fraudulent identity documents consisting of the real veteran's Form DD-214, a Social Security card, and a birth certificate provide additional aggravation. This was not just the use of a false name and identifiers but the use of those things with fraudulently obtained documents to back up the claims.

The actual loss amount also provides aggravation. The guidelines rightly counsel that the more a person steals (or tries to steal), the more they should be punished. *See* USSG §2B1.1(b)(1). Here, the loss was between $15,000 and $40,000, so the guideline increase was four additional levels under USSG §2B1.1(b)(1)(C).

Perhaps the most aggravation, though, is the repetitive nature of defendant's offense. The charged offense here is the fourth documented incident in which defendant stole and used the good name and the personal means of identification of the same veteran. A year in jail and a year of probation from the state of Georgia did nothing to stop nearly identical conduct.

A short review shows why the continuing and repeated nature of this offense merits a substantial sentence. First, defendant was convicted on April 11, 2018, in DeKalb County, Georgia, for the Georgia state offenses of identity fraud and forgery. PSR at ¶ 35. Defendant was sentenced to a year in custody and a year of probation. *Id.* Indeed, defendant was on probation for that offense at the time of the offense here. *Id.* at ¶ 35. As part of that offense, defendant obtained services from the VA Medical Center in Atlanta, Georgia, under the same veteran's name and using the same veteran's identifiers. These services included obtaining prescription medications of Naproxen, Percocet, and Diphenhydramine. Surveillance video from the Atlanta VA Medical Center's pharmacy captured images of the defendant committing the crime there:



Second, on September 19, 2019, defendant was arrested by the University of Tennessee Police Department for the Tennessee offense of criminal impersonation. Officers responded to a complaint that defendant was in a university library and bothering students. Officer P. Fulcher described the complaint in his report as follows:

> On September 3, 2019 at approximately 10:39 hours, I responded to a suspicious person call at 1015 Cumberland Avenue, Hodges Library. Upon arrival, I made contact with an individual that fit the description of the suspicious person on the second floor of Hodges Library. The individual fit the description of an individual who was attempting to get names and phone numbers from students.

Once officers made contact with defendant, he once again provided the veteran's name and identifiers as his own. The entire incident was captured by an officer's body-worn camera.

Third, defendant used the same veteran's name and personal identifiers when he sought medical services from the Park West Medical Center in Knoxville, Tennessee on October 9, 2019. This fraud led to the present crime.

Finally, defendant committed the offense of conviction here the same way. He obtained nearly a week of medical care designed for veterans through fraud, trickery, and deceit. Accordingly, the repeated nature of this offense provides substantial aggravation.

6

## B.  The History and Characteristics of the Defendant

Defendant's history and characteristics provide further support for the Government's recommended sentence here.

For instance, defendant committed this offense shortly after serving a year in custody and while on probation for the similar Georgia offense noted above.  *See* PSR at ¶ 35.

Stealing a veteran's identity, though, is not the full scope of the defendant's crimes.  He also committed some other form of theft by deception in Henry County, Georgia.  *See* PSR at ¶ 32.  And, he committed the Georgia offense of "Reckless Conduct" in the same county and received a sentence of 8 months in jail and a year of probation.  *See* PSR at ¶ 33.  Even worse, on October 13, 2016, defendant burglarized his own mother's home and committed credit card theft.  *See* PSR at ¶ 34.

In sum, defendant, in just a three-year period, has amassed enough criminal history points to place him in criminal history category V, just one level short of the top.

Apart from his criminal history, defendant also has an admitted history of using methamphetamine, even though defendant believes he has "control" over his use.  *See* PSR at ¶ 58.

## C.  The Statutory Purposes of Sentencing

The need to address the statutory purposes of sentencing also supports a serious sentence here.  The Government's requested sentence recognizes the seriousness of the offense and provides just punishment.  *See* 18 U.S.C. § 3553(a)(2)(A).  The requested sentence also will promote respect for the law and the property rights of others.  Indeed, the last sentence defendant received from the state of Georgia failed to do that.

The Government's requested sentence also will afford deterrence and protect the public from future crimes. *See* 18 U.S.C. §§ 3553(a)(2)(B) and 3553(a)(2)(C). The United States is filing a sealed supplement to this Sentencing Memorandum to address particular issues that suggest a heightened need for public protection here.

## D. The Need to Avoid Unwarranted Sentencing Disparities

The Government's recommended sentence will avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a)(6). The recommended sentence is within the defendant's advisory guidelines while also recognizing sentencing concessions the Government has already provided. A sentence within the advisory guidelines, of course, serves the sentencing purpose of treating similar offenders similarly. A primary reason why Congress established the United States Sentencing Commission and authorized promulgated guidelines was to provide "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses by similar offenders." USSG Ch.1, Part A, intro. comment. (n.3). The Government's recommended sentence is within the guideline range and, by definition, supports this 3553(a) factor.

Equally important, a top-of-the-guideline sentence here is particularly appropriate when considering important sentencing concessions the Government has already provided in the parties' plea agreement. First, the United States has agreed not to pursue further charges against the defendant in paragraph two of the plea agreement. [Doc. 32 at ¶ 2]. These charges would have included felony charges for false use of the veteran's Social Security number and identity theft charges based on defendant's interactions with the University of Tennessee Police Department and the Park West Medical Center in Knoxville. Additionally, as noted in the PSR,

8

the Government has dropped the identity theft charged in count two that would have resulted in a mandatory two-year sentence. *See* PSR at ¶ 66.

### E.  The Need for Restitution

Restitution in this case provides no reason for a non-guideline sentence. *See* 18 U.S.C. § 3553(a)(7).  The agreed restitution is $20,502.  PSR at ¶ 78.  Defendant has no assets and no meaningful work history. *Id.* at ¶¶ 62 to 62.  Thus, the existence of restitution coupled with no real means of repayment provides no reason to deviate from the guidelines here.

## VI.  CONCLUSION

For the reasons outlined above, the Government respectfully requests that the Court sentence defendant to 21 months in prison followed by three years of supervised release.

Respectfully submitted, this 26th day of March, 2021.

FRANCIS M. HAMILTON III
ACTING UNITED STATES ATTORNEY

By:  *s/ Mac D. Heavener, III*
Mac D. Heavener, III
Fla. Bar No. 0896748
Assistant United States Attorney
220 West Depot Street, Suite 423
Greeneville, Tennessee 37743
(423) 639-6759